on behalf of Mr. Hernandez. Yes. And you've reserved two minutes for rebuttal and you may proceed when you're ready. Thank you Judge. Good morning. As Judge Nathan has said, I'm Jesse Siegel representing Mr. Alvarado Hernandez. I should say Hernandez Alvarado. And there are primarily three basic issues raised in our briefs. I'm intending to address the issue regarding the District Court's failure to suppress Mr. Hernandez's statement to an agent and also the District Court's failure to ensure that he received a due process and a trial by an impartial jury. We rely on our papers as to the third issue. Now, as I'm not one for hyperbole, but the idea that an attorney could bring a client to meet with the government in an attempt to cooperate and then follow up with phone calls and emails and that the government could then claim that they didn't know at some later date that the defendant was represented by counsel is shocking. Mr. Siegel, on the day of the arrest, does Mr. Hernandez's testimony. The only uncertainty as to this question is introduced by the agent. But he says he doesn't know. At least one point, maybe more than one point. He says he doesn't know. Well, I think what he does is he repeats what the agent says to him. And the agent says to him, well, you're here today and you haven't spoken to your attorney, so you're not represented by him. And Mr. Hernandez appears from the transcript to say, not here today or I'm not represented by him. But that is clearly not what he was saying to the agent. The very first thing. Let me ask you this then, a slightly different angle. If he doesn't know, if he is uncertain about whether the representation continues at that point and he says, I don't know if I have a lawyer, then what happens to your claim, assuming everything else is the same on the no-contact rule? Well, if he says I'm not represented by the counsel. If he says I don't know, my question is more specific. If he says I don't know if I have a lawyer. If we assume that for the moment, that that is enough to say that he was not represented, what happens then? That's the question. Well, one thing he does is he asks to speak to his attorney before proceeding. You're fighting the hypo. I guess I am. So just to help clarify, if he says I don't know, then what? May the lawyers direct contact? I don't think so, because I think that they have a reason to know that he is, in fact, represented by counsel. And they certainly have an opportunity, an obligation to give him the opportunity to reach out to this attorney, which is what he requested to do. And in point of fact, the government acted like they couldn't speak to him until they had contacted this attorney. Well, they're putting together two different issues. One, the New York law about if somebody has an attorney, the attorney has to be there. And the second, the Miranda question, and that's a different one because there, after doing something which maybe the Supreme Court says is not enough, but which I'd be inclined to say is enough, he goes on on his own and does everything. I mean, the Miranda, the second, he quite clearly weighs that, doesn't he? I think as to the Miranda and as to his request for counsel, he states unequivocally the very first thing he states is when told that he can cooperate, I would like to speak to my lawyer first. But then afterwards, he says he wants to talk even if a lawyer ain't there. And you can weigh that. You – if I'm not mistaken, Your Honor, I believe that the law says that the government has to scrupulously honor his request for counsel. And there are certain exceptions after a very long period of time. And if the accused re-initiates the conversation, which is not at all what happened here. Now, the New York professional responsibility rule at issue requires actual knowledge on the part of the prosecutors that your client was represented, correct? Not a should have known or reasonably would have known under the circumstances. No, that's incorrect, Your Honor. The disciplinary rule 4.2 has been ruled by New York state courts to apply where another attorney knew or should have known. But aren't those all predecessor rules to the current version of rule 4.2? Well, one of them – one of the cases that I've cited in the brief is – involves the predecessor to rule 4.2. So that is correct. However, the rule itself was substantively exactly the same. But there were other cases that I've cited there, which I could dig out of the brief, but it's in there, which actually deal with rule 4.2. But the district court was relying on various definitions from the rules of professional responsibility that separately defined reasonably should have known and some of these other squishier forms of knowledge, correct? The district court was, and very frankly, the district court was incorrect in that. And for precisely the reasons that this case would raise was the rule would never be enforceable if there wasn't a new or had reason to know or should have known. Otherwise, for example, I could bring in a client to proffer today and tomorrow the government could claim, well, they didn't know he was represented by counsel. Why? Well, because I hadn't written them a letter tomorrow saying I'm still his attorney. So that's why the reason to know interpretation is there. What if in that hypo that you've described, the client says I'm not represented anymore? I'm a fire peddler. I don't want to be represented anymore. Well, I think that would be, as far as I can tell, an issue raised a first impression because the rule itself can't be waived by the represented party. That's the question of representation. Correct. Let me ask you what our role is. If the district court finds that on these circumstances the government neither knew nor whatever should have known is required was there, what deference do we give to the district court's finding on the question of should have known? That is, that can be a question of fact. On the circumstances, you know, there might be some that they would. You gave an example where it was perfectly clear that they knew and we could say the district court was wrong. What I'm asking is, in the circumstances of this case, what do we owe to the district court's finding, which might be different from the one we might make, about whether the government should have known? Well, I think clearly the court owes deference to the district court's factual findings. As to questions of law or mixed questions of law and fact, the court's review is de novo. And so if the district court was making a finding as to what happened, the court would be entitled to deference. As to the question of whether that was new or should have known within the meaning of Rule 4.2, that would be de novo. Thank you. Unless my colleagues have other questions on this issue, I did want to briefly inquire about the jury note. And you still have your two minutes or rebuttal, so this is extra time. Thank you. Was there a request at the time to inquire of the alternate juror who was being dismissed? There was a request to do a further investigation. I don't believe the request was made so specifically with the suggestion that the way to do that and not worry about infecting the rest of the jury would be to ask the juror who was being let go whether or not there had been a conversation. But clearly that was one of the possibilities that was available to the district court. Other than the fact that they were photographed together, is there any indication, though, from the juror or from the rest of the jury that there was a problem? There had been no communication from the rest of the jury. However, Juror 14, the juror who was let go, her note indicated, actually, I take that his or her note indicated that both that they had had concerns about safety given the nature of the case and given the nature of the parties. And then tied it to seeing somebody taking their photographs who did not appear to be from the legitimate press, didn't have any identification. Is any fervor in the questioning about it itself dangerous in terms of what it does to the jury? That is, if a court starts to ask, have you been threatened or something of that sort, wouldn't you then come back and say that that was improper? I mean, you know, a court saying to a jury, hey, have you guys had anything that scares you? If I were in a jury, I'd start to worry. Well, I could certainly understand that the court was reluctant to do that. But the court had the clearest opportunity to simply ask the juror who was being let go, who was being disqualified, and who had raised the concerns and also had indicated that another juror was also concerned. No, no. That's not what the note indicated. The note indicated that another juror had noticed their photograph being taken. Correct. There's nothing in the note to indicate that another juror was concerned. That's true. What is set forth in the note is the bare fact that I and another juror noticed this picture being taken, which indicates that the juror was concerned. Well, to the contrary, that this juror doesn't know, at least that this juror hadn't conveyed his or her own concerns about safety to any other jurors. Well, I don't think the note establishes that. I believe the note indicates a concern that the juror had, in fact, talked about his or her concerns because the juror's note indicated an awareness that another juror hadn't also noticed their picture being taken by the photographer. So clearly indicating at the very least there had been — Despite the fact that the note says expressly, I have not talked about these concerns to other jurors. Well, there's a question of timing, Your Honor. Basically, the front of the note indicated that the juror had not spoken to the jurors, and then the flip side of the note, which is the part that's in question now, says since then — — which might possibly suggest something, while on the other side we have the fact that almost anything that the court does could do some harm as well. And again, then my question is, what is our job in relation to the decision that the district judge made not to go further? Well, I think the answer is that the district court was obligated to make some further inquiry to find out what had been the nature of the conversation between the two jurors, and that could have easily been done without any risk by simply talking to the juror who was being let go. How did you find out that this other juror also noticed the pictures being taken? What was your conversation with that other juror? And that would have had no risk of poisoning the rest of the jury. Jordan, thank you. All right. Thank you. Thank you. Mr. Segal, as I said, you do have two minutes remaining for rebuttal, and we'll hear from counsel for Mr. Fuentes and yours. And you've reserved two minutes for rebuttal as well. Yes, Your Honor. Good evening to the court. My name is Jay Offsiavich, and I represent Mr. Fuentes-Ramirez. In this appeal, I'm asking you to vacate the judgment and remand the case to the district court for a new trial. As I begin, I would just like to remind the court that while we have the two defendants here, joined for the appeal, these were two separate trials, and I think it is important to remember that. I've raised three points in my brief. This morning, I intend to focus my argument on my claim that there was ineffective assistance of counsel related to the statute of limitations argument. Following a nine-day trial, Mr. Fuentes-Ramirez was found guilty of conspiring to import cocaine, conspiring to possess a machine gun, and possession of a machine gun. His defense was that any alleged conspiracy was aborted or ended between 2013 and 2015 after Mr. Leonel Rivera aborted his role in the conspiracy, though he had, for a period of time, kept engaging in criminal activity. Why can't your ineffective assistance of counsel claim be brought into 2255? Well, it could, Your Honor. I think the record in this case shows that it is actually fully developed, and so it would be appropriate to raise here. Well, but there are all sorts of questions about how strong the statute of limitations argument was and whether it was, under those circumstances, worthwhile doing something about it or not. Now, it's true that what counsel did, that is, the specific instructions that he asked or she asked, I don't know, were incorrect, and so that's an argument, but whether that made any difference is a complicated issue, and isn't it better to have a full hearing on it? I don't believe it's necessary. I think because we have the written judgment from the district court in this case where he evaluated what was presented to the court, when counsel asked for the charge from Sand, and I think it's important to note that he specifically said Sand, but didn't say what charge from Sand. If you were to look for statute of limitations in Sand, you actually come up with a lot of different sections from the pattern book of what could possibly be raised. The court invited counsel to file something. The court wanted to hear what was said, what they wanted to argue. While it was a short period of time, that should not have had any impact on counsel filing anything to the court. They were given the opportunity to do this. They did not do so. They failed. That's the first problem that came up. They then, after the jury came back with their verdict, once again argued that there was a statute of limitations problem and wanted the verdict annulled because of it. And in their papers, they then set forth the theory of the case, which was the first time the court heard this. And the court remarked on that in its opinion in order. So can we pivot, though, to the merits of the statute of limitations defense? The argument from the government is that this was not simply a hub-and-spoke conspiracy focusing on Mr. Rivera, but rather something much broader with acts by your client that extended within the statute of limitations period. Why was the district court wrong? This goes to because, well, one, the court did not have this theory. They didn't ask for a theory of the case charge. They didn't put forth a theory of the case charge. It wasn't until their opinion to their filing to the court in the Rule 29 motion after the verdict. So what burden is it to say that a conspiracy has ended? Isn't it the defendant's burden to show that nothing continues after? Isn't the burden on that one? So the fact that Rivera had dropped out is a factor, but that doesn't show that the conspiracy has ended, does it? But that's what they could have done if they had presented the charge to the judge. That's what they could have summed up to the jury in their closing arguments and could have explained to the jury and left the question to the jury as to when the conspiracy ended, because this was a question that should have been given to the jury. I don't want to cut this out if other people have more questions on it, but I must say I am troubled by the testimony, by the whole Rivera statement that he was not a government plant, because I find Rivera's statement about he just happening to take a shower in another part of a room with somebody whom he hated and had planned to kill to be quite absurd. You know, I must say I am very, it may, and I'd like to know whether basically that testimony was harmless because there was so much other testimony to that effect, but I must say that the government's bringing that in does not make me happy. I agree with you, Your Honor, and I know that was not harmless. Again, that's something further that hurts our client. While the government may use that to support their argument of conspiracy and that these two still were working together, despite the testimony that Rivera wanted to kill my client and that he believed that my client wanted to kill him, that's harmful, and that's why the jury should have started to consider some of these other questions, to evaluate, did the conspiracy end? What was going on? So I agree with you on that, Your Honor. Thank you. Unless there are further questions, I have reserved some time for rebuttal. You have. Thank you. All right, we'll hear from the government. First from Mr. Richman. Thank you, Your Honor. Good morning. May it please the Court. My name is Jason Richman. I'm an assistant U.S. attorney here in the Southern District of New York. I represented the government at trial and in the proceedings below for Mr. Hernandez-Alvarado's case, and I represent the government today on this appeal. I'll start with the no-contact rule argument that counsel for Mr. Hernandez focused on. First, Your Honor, Hernandez still cannot grapple with the straightforward record that Judge Costell credited of two AUSAs standing up in court, affirming that neither of them had actual knowledge of the representation, and defense counsel at the time crediting those statements, declining to question them, and saying that they agreed that the record was complete and that the AUSAs acted in good faith. And to a question that was asked and a hypo that was posed by Mr. Siegel, it is not the government's argument that the government can put its head in the sand and avoid learning something and then claim later no actual knowledge. What then could happen would be, as the rule outlines, that the judge could infer actual knowledge from the circumstances. The standard in this case, and Mr. Siegel. Is actual knowledge needed, inferred from the circumstances, or ought to have knowledge in B, no? Thank you, Your Honor. The standard is actual knowledge, and I'll touch on Mr. Siegel's argument now. The defendant first agreed that this was the standard below. Judge Costell applied that standard. The defendant's opening brief did not grapple with that standard. The defendant raised it in reply, so it's waived. But even if it was not, Your Honor, the defendant is incorrect. Comment eight to the rule is clear, that actual knowledge is all that suffices. And that's not just some idiosyncratic New York rule. It's also in the ABA model rule, which many federal courts have set up laws. By contrast, neither of the cases that Hernandez principally relies upon really grapple with whether actual knowledge suffices. In one, Izzo, the parties actually agreed that the rule was broken, so the court did not have to deal with or grapple with the actual knowledge requirement. And in the other, Meacham, the court found that although the lawyer denied actual knowledge, the circumstances supported the inference that he did, in fact, have actual knowledge. I'm sorry, Your Honor. I just want to ask, what is your view of what to do under the rule if the client doesn't know if a representation continues? Thank you, Your Honor. The AUSA's knowledge, I believe, controls. In this case, Mr. Hernandez's responses to the agents were important because if he had said, I am represented, they would have reached back to the AUSA's and I think things would have gone differently. If what is in the defendant's head does not get conveyed to the AUSA's and if the AUSA's had no actual knowledge or if that actual knowledge should not be inferred from the circumstances, I don't think that what's in the defendant's head would be dispositive. Thank you, Your Honor. And before I finish on this standard point, Judge, just one last point, which is that there are cases, federal cases, in which actual knowledge has been relied upon as the standard. I'm happy to give a couple sites if helpful. Beyond that, Judge, I would move on to the juror misconduct or the juror inquiry issue. First, I believe it was Judge Nathan, to your question, transcript page 561 is the site when defense counsel below said he did not know how to conduct the further inquiry, so there was no specific proposal put forward. And Judge Castell acted well within his discretion in how he dealt with this issue. At the time, there was one juror who had written one note to the court. The parties agreed that that juror should be dismissed. All of the jurors had been instructed by Judge Castell, if you have a problem, write me a note. Don't discuss that note with anyone else. And no one else contacted the court. There was simply no need for further inquiry. No one else reached out to the court after that. And Judge Castell acted well within his discretion in declining to do what was not proposed but declining to do anything else to further inquiry. You agree that questioning the juror who was dismissed further would have caused no harm, but you say it wouldn't really have added much. That is correct, Your Honor. I do think there are worlds in which there is potential harm to follow from that. For example, I don't think we need to get there, Judge. For example, we don't need to get there. Yeah, yeah. For example, discretion is the better part of that. Yeah, I mean, I was curious because it's hard to figure what that harm would be, so. Okay. I'm happy to engage, Your Honor. In that case, the juror who's being dismissed, let's say they said, I talked to Juror X about why that juror told me Z. The court then likely would follow up with Juror X and say, hey, did this happen? That is the risk that the court is told to avoid. Well, that's not the risk I'm asking the dismissed juror. That's the risk of learning something from the dismissed juror. Exactly. That would then require an evaluation of risk-benefit, right? Exactly, Your Honor. And then the parties could engage. I see why you abandoned that argument. I didn't want to leave you wanting, Your Honor. You've confirmed that there would be no harm. I should have trusted my instinct. But I suppose then the way I think about the question, if counsel below had said, well, Judge, let's just at least ask the dismissed juror if they had any communications or had any reason to think other jurors were concerned, there's no harm in that, and the judge said, no, I'm not going to do that. Would that have been an error? I think that would have probably been within Judge Costell's discretion, just based on the record that was before the court at that time, which was no other juror expressing anything about this supposed photograph. Thank you very much. Thank you. All right. Mr. Gutwillig. Good morning, Your Honors. May it please the Court. My name is Jacob Gutwillig. I'm an assistant United States attorney here in the Southern District of New York. I represented the government at the Fuentes-Ramirez trial, and I represent the government on appeal. I'd like to address today the argument that Fuentes-Ramirez has raised that trial counsel was ineffective for not proposing a different or correct statute of limitations during instruction, assuming that one could have been correct in that situation. As the Court pointed out in its questions, in order to prevail on the chart with the argument that a statute of limitations or this statute of limitations instruction should have been given, one, the proposed instruction must have been correct in all respects, which the Court has said correctly, and Judge Costell found that it was not. The second is that he would have needed to have shown prejudice, which would be actual prejudice for the Court to decline to give a theoretically correct instruction. And he cannot do that here because there is no basis in the record for such an instruction that would lead to acquittal. Here, as the government argued in its papers— Then are you arguing we should deny this or send it to habeas? That is, if your argument is correct, you should be here telling us that we should deny it right here and now? Your Honor, the government's position in its papers was that the record would be better developed on a section 2255. That said, that the argument has now been raised. I'm addressing the merits in that I think any such claim would fail because the defendant or Fuentes-Ramirez would not be able to— What you're saying is that there is enough likelihood that it would fail that for us to make any decision on it now would be incorrect. I think what I'm saying is that if the Court were inclined to find that it would fail, it could be appropriate to do that now, but if the Court has any doubt, then a 2255 proceeding would be more appropriate. But specifically— I understand your argument not even really being about prejudice. So assuming you're addressing the ineffective assessment of the counsel claim, it doesn't tell me if I'm wrong that it's really a prejudice argument. There's no error argument because there was no basis. Had it been asked for, there's no basis in the record to support that it ought to have been given. Do I have that right? I think that's correct, Your Honor. The government, the proof of trial established a broad-based conspiracy that had many participants, including police, military, judges, politicians, workers for the defendant at his drug lab, all of that. And there's more than sufficient evidence in the record that that conspiracy, and conspiracy is a continuing offense, continued past whenever Lanell Rivera dropped out of the conspiracy because he began working with the DEA. Additionally, there was testimony about things that happened post-June 3rd of 2015, including electronic communications, including testimony about, I think electronic communications about avoiding wiretaps and additional murders. And there's also the whole body of evidence with respect to the iCloud and Instagram accounts from Giovanni Gutierrez that was also properly admitted and additional statements and further evidence that the conspiracy was happening. So to summarize all of those things, yes, Your Honor, to your point, I think that is correct, it was not error, and also he would not have been able to show prejudice, and here the result of the proceeding would not have been different, and that is the standard for prevailing on an ineffective assistance claim. Could you address my problems with Rivera's testimony and whether he was a government plant? My problem with Rivera's testimony and whether he was in fact a government plant, given the long dealing with the government, given his long dealing and hatred with Ramirez, and the unlikelihood of somebody going to take a shower in the other side of jail. So, Your Honor, the district court found and Lionel Rivera testified at trial. And I'm very, you know, I tend to give deference, but I must say when I looked at that, it didn't strike me as being believable, and I must say I don't understand why the government brings in things like this. I'm not sure that this made much of a difference given all the testimony that was there, but for the government to do something like that is to ask for trouble, because you do it, there's another case in which it is more harmful, and then we're stuck because you brought in stuff that you really could have done without. So I agree with Your Honor that any error here would have been harmless given the amount of evidence in this case. But to answer your question directly, what Mr. Rivera testified to was that Fuentes Ramirez initiated the conversation with him. That issue was litigated pretrial. It was part of the motions in limine, and there was plenty of time to develop that record and ask questions about it. On the standard here, and I point the court to the Witten case, which is 610 F3D 168, which effectively stands for the proposition that just because there's a long-term relationship with a cooperator does not mean. No, by itself it doesn't. No one of these things is enough. I look at them together, and frankly, it smells. I hear Your Honor's point. I will say that Mr. Rivera testified clearly on your oath that the defendant that Fuentes Ramirez approached. A highly believable fellow, him. Most of the people in this trial are highly believable. Go on. Go on. It's fine. Your Honor, I think without. I mean, I suppose there's an argument that even if the lack of credibility in the testimony is that it wasn't an accidental meeting up, there still would have to be something to show that the government put him up to it, right? That's right, and that's the test here, is that whether the government directed him to do that, and quite clearly, based on the record, the government did not. So there's nothing in the record to suggest that's not a lie. Or at least to say the district court could have found that the government did not. You're now telling me more, but that's okay. The district court found that. That's correct. Okay. Thank you. Yes. Unless the panel has any additional conversations. Thank you, Mr. Miller. Thank you. All right. Mr. Siegel, you have two minutes for rebuttal. Thank you, Judge. I'll try not to overstay my welcome. The very first thing that Mr. Hernandez said to the agent was that he hadn't spoken to this lawyer in over a year, but wanted to speak to him first. He referred to him as my lawyer. Now, the reason there had been a gap of a year is because the government had never gotten back to the lawyer and said either we want to see your client again or we don't want to see your client ever again. So the reason that there had been this gap of a year was not because of any break in their relationship. You said he referred to him as my lawyer. What's the record say for that? Okay. One moment. That would be at A-116. The agent said to him that he could cooperate with law enforcement or not or plead guilty to the charges or not. And as I've quoted here, the defendant responded that he wanted to cooperate with the agents and specified that he told his lawyer, which I've put in italics, over a year ago that he wanted to cooperate and he, lawyer, told him that he would speak with prosecutors but never notified Hernandez-Alvarado. The agent asked Hernandez-Alvarado if he presently had a lawyer and Hernandez-Alvarado stated that he had not spoken to Manny, the lawyer, in over a year but would like to call him first. In other places quoted in the brief, he says that hopefully he will join us. What relevance are the lawyer's comments about effectively not being sure whether he was going to represent this client or whether another lawyer would come into play? So I think one shouldn't say that the lawyer said more than that they actually said. And I think that all they were expressing is the idea that, well, they hadn't heard from the lawyer that day. But you could look at what the lawyers did. And what the lawyers did is they put a stop to the questioning. I'm sorry. I'm talking about Manny. Oh, Manny. Who expressed some question about whether he was going to represent your client or whether other lawyers would be interested in this representation. That, I'm not remembering that being part of the record as to what happened on that day. As a matter of fact. It does post-date. Right. What happened that date was, now this is, I am overstating my welcome. Go ahead. What happened that date was at the prosecutor's direction or with their permission, the agent called Manny, Mr. Red Areta, two times within a couple of minutes of each other and didn't leave a message. So Mr. Red Areta only heard that his client, Mr. Hernandez, had been arrested about two and a half hours later and he heard that because somebody else was arrested at the same time as Mr. Hernandez and the word got back to Mr. Hernandez's family. And then he immediately called the prosecutors and said, hey, I understand you have my client. I still represent him. Please don't question him. Thank you, Mr. Siegel. Thank you. Mr. Afsiovic, forgive me for the mispronunciation. You have two minutes for a vote. Thank you, Your Honor. The government in responding to my argument says that we need to show actual prejudice. The record clearly shows that there is actual prejudice in that the jury never got to consider Mr. Fuentes Ramirez's defense. The only defense to this charge was that the conspiracy ended once Leonel Rivera became involved with the DEA and they parted ways. That's when the conspiracy ended. There's a possibility, you know, they say that there's evidence that showed that there was other criminal activity. They don't prove that this was all part of the same conspiracy. There may have been multiple conspiracies, and the government is obligated to show that this was all part of the same conspiracy that continued throughout the period set forth in the indictment. The jury never got to consider that. They were never asked to make a finding. Was the conspiracy abandoned? Did it end once Rivera became involved with the DEA? Were there questions posed to the witnesses to develop that defense? There were questions posed to Rivera as to what happened once they parted ways. Rivera stopped communicating with my client. He continued for a period of time up until 2015 with criminal activity, but he did so without my client. Now, the government tries to show that there was other criminal activity involved with my client. One of the easiest examples to show, and the judge gave a limiting instruction pointing out that it wasn't related to this conspiracy, but was his activity that Mr. Medina testified to regarding the biomass. So there was other activity going on. The questions involving President Hernandez or presidential candidate Hernandez at the time, what they were talking about may have been completely unrelated to the conspiracy involved with Mr. Rivera. Those were questions that the jury should have considered, and they would have considered if trial counsel put forth properly the charge that they really wanted. They did not do so. The court gave them the opportunity to do so. The court recognized from their filings afterwards what the argument would have been, what their theory of the case was, but the court didn't know at the time to charge the jury that way. Given that there's actual prejudice, I think we see that the ineffective assistance of counsel claim holds. Alternatively, if the court does have some questions about this, at this point, given that we're talking about this on appeal, there's no reason why you couldn't send it back to the court for a short fact finding on any questions the court has. What would happen if we wait until 2255 is that my client would be further prejudiced in even trying to raise this claim. It's important to remember that my client is Honduran. He's not from the United States. He doesn't speak English. He doesn't write in English. He doesn't read English. More importantly, on 2255, he's not entitled to counsel. If you send this back, he would at least have counsel who could assist him in developing this claim further to help answer these questions. Otherwise, my client is left hanging in the wind, and he will probably not be able to fully flesh out this argument on his own. You're appointed counsel? I've been appointed for the appeal. I don't know if we would be continued if the case is sent back, only because I'm from the Western District of New York, and I don't know if our office would be, particularly at this point in time, be able to send me down to represent him further or if we would have to get local counsel to address it. Well, and while very often it is the government who asks that it goes back, that it be decided now, I must say that when we make somebody use up their one habeas on this, if it ain't a very strong one, we're not doing the defendant a favor. That is, very often it looks as though we're doing the defendant a favor by saving it and saving it for 2255, but then you're using up their one shot at habeas, and that's not very good. So there is an argument for deciding now if one can. I agree, Your Honor. Unless there are further questions, I would ask you to send this back to the district court for a new trial. Thank you. Thank you. Thank you to both sides. Appreciate your arguments. The matter is submitted. We take it under.